| | |
|---|---|
| PHIL BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate; and | |
| TIM MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, | |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| SYLVIA BURWELL, in her official capacity as Secretary of the United States Department of Health and Human Services; | |
| THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; | |
| ANDREW SLAVITT, in his official capacity as Acting Administrator for the Centers for Medicare and Medicaid Services; | |
| THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; | |
| RENARD MURRAY, in his official capacity as Regional Administrator for the Office of the Assistant Secretary for Health, U.S. Department of Health and Human Services, Region IV; | |
| DEMPSEY BENTON, in his official capacity as Interim Secretary of the North Carolina Department of Health and Human Services; and | |
| THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Defendants. | |

NOW COME the Plaintiffs, PHIL BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIM MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, by and through undersigned counsel, as and for their Complaint against Defendants SYLVIA BURWELL, THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ANDREW SLAVITT, THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, and RENARD MURRAY (collectively, "the Federal Defendants"), and DEMPSEY BENTON and THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES (collectively, "the State Defendants").

## INTRODUCTION

1. This case involves an unprecedented effort by the incoming gubernatorial administration, working together with the outgoing presidential administration, to unlawfully expand North Carolina's Medicaid program and saddle North Carolinians with hundreds of millions of dollars of annual Medicaid expenses. Ignoring clear State law that provides that any future expansion of Medicaid under the Affordable Care Act must be approved by the General Assembly, the State Defendants and the Governor stand poised to unlawfully submit a State Plan Amendment to expand Medicaid in North Carolina. Ignoring their clear obligations under the Medicaid Act, the Affordable Care Act, the Administrative Procedure Act, the Tenth Amendment to the United States Constitution, and the Guarantee Clause of the United States Constitution, the Federal Defendants stand poised to unlawfully approve that State Plan Amendment. Plaintiffs seek appropriate declaratory and injunctive relief preventing these imminent violations of law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the Medicaid Act, the Tenth Amendment, the Guarantee Clause, the Declaratory Judgment Act, and the Administrative Procedure Act.

3. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, *id.* § 1391(b)(2); because this is a suit against officers of the United States and a substantial part of events occurred in the district, *id.* § 1391(e)(1)(B); this is a suit against officers of the United States, a plaintiff resides in the District, and no real property is involved, *id.* § 1391(e)(1)(C); and because a defendant is subject to the court's personal jurisdiction in this district, *id.* § 1391(b)(3).

4. Venues is proper in this Division under this Court's Local Rule 40.1(c)(1) because the named Plaintiffs reside in the district; because the Interim Secretary of the North Carolina Department of Health and Human Services resides in this Division; and because the claim is alleged to arise in the Division.

## PARTIES

5. Plaintiff Phil Berger is the President Pro Tempore of the North Carolina Senate. He represents the State's 26th Senate District. He has taken an oath to support and defend the Constitution of the United States and the Constitution of North Carolina. As the leader of the North Carolina Senate, he represents the institutional interests of that body in this case. He appears in his official capacity.

6. Plaintiff Tim Moore is the Speaker of the North Carolina House of Representatives. He represents the 111th State House District. As the leader of the North Carolina House of

Representatives, he represents the institutional interests of that body in this case. He appears in his official capacity.

7. Defendant Sylvia Burwell is the Secretary of the United States Department of Health and Human Services ("Secretary"). She is sued in her official capacity.

8. Defendant the United States Department of Health and Human Services ("U.S. HHS") is a federal executive agency.

9. Defendant Andrew Slavitt is the Acting Administrator of the Centers for Medicare and Medicaid Services. He is sued in his official capacity.

10. Defendant the Centers for Medicare and Medicaid Services ("CMS") is a division of U.S. HHS.

11. Defendant Renard Murray is the Regional Administrator for the Office of the Assistant Secretary for Health, United States Department of Health and Human Services, Region IV. He is sued in his official capacity.

12. Dempsey Benton is the Interim Secretary of the North Carolina Department of Health and Human Services (together with the North Carolina Department of Health and Human Services, "N.C. HHS"). He is sued in his official capacity.

13. The North Carolina Department of Health and Human Services is a North Carolina state agency.

## BACKGROUND

**The Affordable Care Act's Medicaid Expansion and the Supreme Court's Decision in *NFIB v. Sebelius*.**

14. Medicaid is a joint State and federal program that provides federal funding to States to assist low income families and needy individuals to obtain healthcare. In order to receive the federal funding, States must comply with a host of federal criteria governing matters including but

not limited to which individuals must receive care, what services they must receive, and the cost of those services. North Carolina, like every other State, participates in the Medicaid program.

15. Medicaid spending places a great strain on North Carolina's budget. In Fiscal Year 2015, Medicaid spending accounted for 31.5% of the State's total spending. By spending nearly one out of every three dollars on Medicaid, North Carolina's Medicaid expenditures exceed the national average of 28.2% of State spending that goes toward Medicaid.

16. Prior to the 2010 enactment of the Patient Protection and Affordable Care Act, 124 Stat. 119 ("Affordable Care Act"), States were required under Medicaid to cover only certain discrete categories of needy individuals, and there was no mandatory coverage for most childless adults. The States also enjoyed significant flexibility with respect to the coverage levels for parents of needy families, and on average States covered only those unemployed parents who make less than 37 percent of the federal poverty level, and only those employed parents who make less than 63 percent of the poverty line.

17. The Affordable Care Act dramatically increased State obligations under Medicaid. Under the Act's Medicaid expansion, States would provide Medicaid coverage to all adults with incomes up to 133 percent of the federal poverty level. The Act also created a new "essential health benefits" package that States would provide to all new Medicaid recipients. The Affordable Care Act required States to pay for part of this Medicaid expansion beginning in 2017, with the portion charged to the States rising to 10 percent of the total cost in 2020 and every year thereafter. If States declined the Medicaid expansion, the Affordable Care Act provided that they would lose *all* of their Medicaid funding.

18. In *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) ("*NFIB*"), the Supreme Court held that the Medicaid expansion exceeded Congress's power under

the Spending Clause insofar as it put States to the Hobson's Choice of deciding to accept the Medicaid expansion or forfeit all Medicaid funds. Thus, after *NFIB*, States have the option whether to accept the Medicaid expansion.

**North Carolina Declines the Medicaid Expansion and Requires All Future Expansions To Be Approved By the Legislature.**

19. After *NFIB*, the North Carolina General Assembly passed, and the Governor signed into law, a statute providing that North Carolina would not expand its Medicaid eligibility under the Affordable Care Act. That statute also provided that any future expansion of Medicaid under the Affordable Care Act must be approved by the General Assembly. Specifically, the statute provided that "[n]o department, agency, or institution of this State shall attempt to expand the Medicaid eligibility standards provided in S.L. 2011-145, as amended, or elsewhere in State law, unless directed to do so by the General Assembly." N.C. Session Law 2013-5, § 3, S.B. 4, 2013 N.C. Sess. Laws 43 ("N.C. Session Law 2013-5").

20. Other provisions of North Carolina law also require the General Assembly to approve any expansion of Medicaid eligibility. North Carolina law prohibits Defendant N.C. HHS from determining eligibility categories and income thresholds for Medicaid. N.C. GEN. STAT. § 108A-54(e)(4). And it prohibits N.C. HHS from allowing its total expenditures to exceed the authorized budget for the Medicaid program. *Id.* § 108A-54(e)(1). *See also id.* §§ 108A-54(f), 108A-54.1A.

21. North Carolina law thus requires the General Assembly to approve any expansion of the State's Medicaid program under the Affordable Care Act. Put differently, North Carolina law *prohibits* either the Governor or N.C. HHS from unilaterally expanding the State's Medicaid program.

22. Consistent with these statutes, the General Assembly in 2015 voted down a proposal to expand the State's Medicaid program under the Affordable Care Act.

**Defendants Brazenly Ignore North Carolina Law and Plan To Expand the State's Medicaid Program Without the Assent of the General Assembly**

23. On January 1, 2017, Roy Cooper was sworn in as Governor of North Carolina. Within three days after swearing an oath to uphold the Constitution of North Carolina and abide by his duties under that Constitution—including the duty to take care that the laws shall be faithfully executed—Governor Cooper set about brazenly ignoring the duly enacted laws that North Carolinians, through their elected representatives, have inscribed in their statute books. Although the law plainly requires that *the General Assembly* must decide whether North Carolina will expand its Medicaid program, the Governor and the N.C. HHS have unlawfully arrogated that power to the executive branch.

24. Governor Cooper has justified his decision to ignore North Carolina law by claiming that he has the authority to pursue his vision of what it means to safeguard North Carolinians' health, notwithstanding any duly enacted law to the contrary. He has not claimed that the statute violates any specific provision of the North Carolina Constitution; instead, he has asserted that the statute impinges on "'the core executive authority' of the governor to accept federal funds to look out for the health of the people." David Ranii & Lynn Bonner, *Gov. Roy Cooper wants to expand Medicaid; Republicans vow to fight*, THE NEWS & OBSERVER (Jan. 4, 2017), https://goo.gl/UGg9kg. The Governor's limitless claim to executive power, more familiar to First Century Romans than Twenty-First Century Americans, has no basis whatsoever in the Constitution or statutes of North Carolina.

25. On January 6, 2017, the Governor issued a public notice of his intention to seek the approval of the Federal Defendants to expand the State's Medicaid program under the Affordable

Care Act ("Public Notice"). Although State law requires him to give ninety days' notice of any proposal to expand Medicaid coverage (assuming such a proposal was authorized by the General Assembly), N.C. GEN. STAT. § 108A-54.1A(d), the Governor gave only ten days' notice in a transparent effort to get his *ultra vires* proposal before a friendly presidential administration. Comments on the Governor's notice must be filed by Sunday, January 15, 2017. On information and belief, Governor Cooper intends to submit his plan to CMS sometime between January 16 and January 19, 2017, before the Obama Administration comes to an end.

26. Plaintiffs have informed CMS that the Governor does not have the authority to unilaterally submit any State Plan Amendment to expand Medicaid, and that Medicaid expansion would, by recent estimates, require a State commitment of hundreds of millions of dollars.

27. The Federal Defendants nevertheless intend to violate the Medicaid Act and the Constitution by accepting Governor Cooper's illegal submission and expanding North Carolina's Medicaid program. Defendant Burwell announced that Federal Defendants "will process the governor's proposal as expeditiously as possible when we get it." William Douglas & Lesley Clark, *Swift federal action vowed on NC governor's Medicaid expansion plan*, MCCLATCHY DC (Jan. 9, 2017), https://goo.gl/2ZuIJb. This statement indicates that the Secretary has already made a decision on the proposed State Plan Amendment and intends to approve it before she leaves office on January 20, 2017.

28. Governor Cooper's unlawful Medicaid expansion, if illegally accepted by the Federal Defendants, would commit North Carolina to spending *more than half a billion dollars* through 2021.

29. Upon information and belief, the approval of the proposed State Plan Amendment will trigger immediate expenditures of unrecoverable State funds.

## The Structure of the Medicaid Program

30. In order to qualify for federal Medicaid funding, States must receive approval for a "State plan." *See* 42 U.S.C. § 1396a. A State may amend its State Plan from time to time and submit those amendments to the Secretary for her approval. 42 U.S.C. § 1316(b).

31. When the Secretary receives a request to approve a State Plan or State Plan Amendment, she is required, *inter alia*, to confirm that the plan or amendment conforms with the requirements of Section 1902(a) of the Social Security Act, 42 U.S.C. § 1396a(a). *See* 42 U.S.C. §§ 1316(a), 1396a(b).

32. Among the requirements of Section 1902(a) are the requirements that the State Plan "provide that [the plan] shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them," and "provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan." 42 U.S.C. § 1396a(a)(1), (5). These particular requirements ensure that all of the other requirements under Section 1902(a)—the conditions of the Federal money that States receive—will in fact be observed by a State implementing its Medicaid program.

## North Carolina's Medicaid Program

33. In order to qualify for federal funding, North Carolina has adopted, and the Secretary has approved, a "State plan."

34. North Carolina has designated N.C. HHS as its single State agency to supervise the administration of the State Plan at the local level by county departments of social services. N.C. GEN. STAT. § 108A-25.

35. As required by Section 1902(a) of the Medicaid Act, 42 U.S.C. § 1396a(a) and CMS regulations, 42 C.F.R. § 431.10, when North Carolina last designated N.C. HHS as its single

9
Case 5:17-cv-00025-FL   Document 1   Filed 01/13/17   Page 9 of 20

state agency, it certified that N.C. HHS has the authority to supervise the administration of the plan as set forth in, *inter alia*, N.C. GEN. STAT. § 108A-54.

36. Under that provision of North Carolina law, N.C. HHS has substantial authority to "[e]stablish and adjust all [State Medicaid] program components," but it is explicitly not authorized to adjust "eligibility categories and income thresholds." N.C. GEN. STAT. § 108A-54(e)(4). The General Assembly has expressly reserved the authority to determine eligibility categories and income thresholds for itself. *Id.* § 108A-54(f).

37. Based on the eligibility categories and income thresholds set by the State, N.C. HHS is authorized to make administrative rules concerning "the terms and conditions of eligibility for applicants and recipients" of Medicaid. N.C. GEN. STAT. § 108A-54.1B(a). The county boards and departments of social services then administer the State Plan at the local level. Under N.C. HHS rules, "the authority to approve or deny assistance rests with the county board of social services." 10A N.C. ADMIN. CODE § 23C.0103(b).

38. N.C. HHS is also authorized by statute to submit State Plan Amendments for federal approval, but only provided such amendments do not concern "eligibility categories and income thresholds," and only provided it gives proper notice. N.C. GEN. STAT. § 108A-54.1A (citing N.C. GEN. STAT. § 108A-54(f)).

39. Once these amendments receive federal approval, they have the status of administrative rules. N.C. GEN. STAT. § 108A-54.1B(d).

## COUNT I
### Violation of Title XIX of the Social Security Act
(Against Federal and State Defendants)

40. Plaintiffs incorporate the above paragraphs by reference as if set forth in their entirety.

41. Section 1116(a) of the Social Security Act, 42 U.S.C. § 1316(a), requires the Secretary to determine whether a plan or amendment submitted by a State meets the requirements of Section 1902(a), 42 U.S.C. § 1396a(a). *See also id.* § 1396a(b).

42. For purposes of State Medicaid plans, the Secretary has delegated this determination to CMS and its Regional Administrators, including Defendant Regional Administrator Murray. 42 C.F.R. § 430.15.

43. Section 1902(a) requires that a State Plan must "provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. § 1396a(a)(1).

44. Section 1902(a) also requires that a State Plan must "provide for financial participation by the State equal to not less than 40 per centum of the non-Federal share of the expenditures under the plan with respect to which payments under section 1396b of this title are authorized by this subchapter." 42 U.S.C. § 1396a(a)(2).

45. Once the State Defendants submit, and the Federal Defendants approve, the proposed State plan amendment, it will have the status of a rule under North Carolina law. N.C. GEN. STAT. § 108A-54.1B(d).

46. The State Defendants lack statutory authority to propose plan amendments altering eligibility categories and income thresholds. N.C. GEN. STAT. §§ 108A-54(e)(4), 108A-54.1A(a). They are explicitly prohibited from proposing plan amendments that expand Medicaid coverage under the Affordable Care Act. N.C. Session Law 2013-5.

47. Because the plan amendment will have been enacted in excess of the State Defendants' statutory authority, it will lack the force and effect of law.

48. It therefore will not be mandatory as a matter of North Carolina law upon the political subdivisions charged with administering the State Plan, in violation of Section 1902(a)(1) of the Social Security Act, 42 U.S.C. § 1396a(a)(1).

49. In addition, the State Defendants have authority to adopt rules regarding eligibility requirements and determinations only if "they do not conflict with the parameters set by the General Assembly." N.C. GEN. STAT. §§ 108A-54(f). One such parameter is that no agency may "attempt to expand the Medicaid eligibility standards" pursuant to the Affordable Care Act. N.C. Session Law 2013-5, § 3.

50. Consequently, any rule that State Defendants would adopt to implement the proposed State Plan Amendment's eligibility categories and income thresholds would lack the force of law.

51. The eligibility categories and income thresholds set by the proposed State Plan Amendment would therefore not be mandatory as matter of North Carolina law upon the political subdivisions charged with administering the State plan, in violation of Section 1902(a)(1).

52. N.C. HHS lacks authority to operate the State Medicaid program in excess of the budget authorized for that program by the General Assembly. N.C. GEN. STAT. § 108A-54(e)(1). In addition, North Carolina's Constitution forbids any draws "from the State treasury but in consequence of appropriations made by law." N.C. CONST. art. V, § 7.

53. The current budget does not account for an expansion of eligibility under the Affordable Care Act.

54. Having expressly forbidden the expansion of eligibility under the Affordable Care Act, the General Assembly is not likely to pass a law appropriating additional funds to cover that expansion, unless it is coerced to do so by the threat of losing all Medicaid funds.

55. North Carolina's State Plan, as amended by the proposed State Plan Amendment, would therefore not adequately "provide for financial participation by the State equal to not less than 40 per centum of the non-Federal share of the expenditures under the plan with respect to which payments under section 1396b of this title are authorized by this subchapter," in violation of Section 1902(a)(2).

56. The Federal Defendants lack authority to approve the proposed State Plan Amendment, and its submission and approval are contrary to federal law.

57. As a direct and proximate result of State Defendants submitting, and Federal Defendants formally approving, the proposed State Plan Amendment, North Carolina will incur significant expenses.

58. As a direct and proximate result of State Defendants submitting, and Federal Defendants formally approving, a State Plan Amendment that does not comply with Section 1902(a) of the Social Security Act, North Carolina could lose all its federal Medicaid funding. 42 U.S.C. § 1396c.

59. As representatives of the branch of North Carolina's government charged with appropriating funds, Plaintiffs and the institutions they represent are injured by these expenses and the threatened loss of funding. Approval of the Governor's *ultra vires* plan would impinge on the Plaintiffs' and the General Assembly's core legislative powers.

60. Defendants' own statements and commitments in the Public Notice confirm that these concrete injuries are imminent and likely to occur.

61. Plaintiffs lack an adequate remedy at law.

62. This Court has inherent equitable authority to award injunctive relief against federal or state actors to prevent violations of federal law.

63. This Court has authority under 28 U.S.C. § 2201 to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## COUNT II
### Violation of Title XIX of the Social Security Act
(Against Federal Defendants)

64. Plaintiffs incorporate the above paragraphs by reference as if set forth in their entirety.

65. Federal Defendants are empowered under the Social Security Act to approve only those plans that are submitted by a State.

66. North Carolina's designation of N.C. HHS to act on its behalf is subject to the limitations on N.C. HHS's authority contained in the statutes listed in North Carolina's certification. *See* 42 C.F.R. § 431.10(b)(1).

67. Those statutes limit N.C. HHS's authority by providing that it cannot alter eligibility categories or income thresholds in North Carolina's State Plan unless the General Assembly directs it to do so. N.C. GEN. STAT. §§ 108A-54(e)(4), (f).

68. Federal Defendants are on notice that the General Assembly has prohibited N.C. HHS from expanding Medicaid eligibility under the Affordable Care Act.

69. Because N.C. HHS is not authorized by State law to submit the proposed State Plan Amendment, N.C. GEN. STAT. § 108A-54.1A(a), the proposed State Plan Amendment will not come from the State.

70. The Federal Defendants therefore lack authority to approve it.

71. As a direct and proximate result of Federal Defendants approving the proposed State Plan Amendment, North Carolina will incur significant expenses.

72. As a direct and proximate result of Federal Defendants approving a State Plan amendment that does not comply with Section 1902(a) of the Social Security Act, North Carolina could lose all its federal Medicaid funding. 42 U.S.C. § 1396c.

73. As representatives of the branch of North Carolina's government charged with appropriating funds, Plaintiffs and the institutions they represent are injured by these expenses and the threatened loss of funding. Approval of the Governor's *ultra vires* plan would impinge on the Plaintiffs' and General Assembly's core legislative powers.

74. Defendants' own statements and commitments in the Public Notice confirm that these concrete injuries are imminent and likely to occur.

75. Plaintiffs lack an adequate remedy at law.

76. This Court has inherent equitable authority to award injunctive relief against federal actors to prevent violations of federal law.

77. This Court has authority under 28 U.S.C. § 2201 to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## COUNT III
**Violation of the Tenth Amendment to the United States Constitution**
(Against Federal Defendants)

78. Plaintiffs incorporate the above paragraphs by reference as if set forth in their entirety.

79. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

15
Case 5:17-cv-00025-FL   Document 1   Filed 01/13/17   Page 15 of 20

80. In administering the Social Security Act, Federal Defendants exercise the executive power pursuant to a congressional authorization.

81. Under the Social Security Act, Congress has enlisted States to administer federal requirements, and authorized Federal Defendants to enforce those requirements, as a condition of federal funding offered pursuant to Congress's powers under the Spending Clause.

82. Congress's imposition of those requirements is permissible only insofar as a State consents to accept those requirements in exchange for federal funding.

83. If the Federal Defendants approve the proposed State Plan Amendment, new requirements will be imposed on North Carolina on pain of losing all its federal funding.

84. The State Defendants lack authority to consent on behalf of North Carolina to these requirements.

85. These requirements will therefore be imposed on North Carolina without its consent, in violation of the Tenth Amendment.

86. As representatives of the General Assembly, and of the State and People of North Carolina, Plaintiffs and the institutions they represent are injured by this usurpation of their constitutionally-reserved authority.

87. Defendants' own statements and commitments in the Public Notice confirm that these concrete injuries are imminent and likely to occur.

88. Plaintiffs lack an adequate remedy at law.

89. This Court has inherent equitable authority to award injunctive relief against federal actors to prevent violations of federal law.

90. This Court has authority under 28 U.S.C. § 2201 to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## COUNT IV
### Violation of the Guarantee Clause of the United States Constitution
(Against Federal Defendants)

91. "The United States shall guarantee to every State in this Union a Republican Form of Government . . . ." U.S. CONST. art. IV, § 4.

92. A republican form of government requires a fully effective legislature and a chief executive constrained by duly enacted laws. A republican form of government does not grant a Governor the unenumerated, plenary power to disregard any duly enacted law based on the Governor's own view of what constitutes the public health and safety.

93. By formally approving the Governor's *ultra vires* application to expand Medicaid and overriding a legislative enactment that expressly withholds consent to that expansion, the federal Defendants will deprive Plaintiffs of the aforementioned guarantees of a republican form of government.

94. As representatives of the General Assembly, and of the State and People of North Carolina, Plaintiffs and the institutions they represent are injured by this usurpation of their constitutionally-reserved authority.

95. Defendants' own statements and commitments in the Public Notice confirm that these concrete injuries are imminent and likely to occur.

96. Plaintiffs lack an adequate remedy at law.

97. This Court has inherent equitable authority to award injunctive relief against federal actors to prevent violations of federal law.

98. This Court has authority under 28 U.S.C. § 2201 to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## COUNT V
## Administrative Procedure Act
(Against Federal Defendants)

99. Plaintiffs incorporate the above paragraphs by reference as if set forth in their entirety.

100. The Administrative Procedure Act forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" that is "contrary to constitutional right, power, privilege, or immunity;" or that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2). It empowers this Court to "hold unlawful and set aside" such agency action, *id*, or to compel agency action unlawfully withheld.

101. The Federal Defendants, as a practical matter, have taken a final agency action by announcing their intention to expeditiously process the State Plan Amendment.

102. That final agency action is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

103. That final agency action is contrary to constitutional right, power, privilege, or immunity.

104. That final agency action is in excess of Federal Defendants' statutory authority.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

(i) enter a declaratory judgment that:

a. State Defendants lack the right, power, or authority to exercise the option given under Section 1116(b) of the Social Security Act, 42 U.S.C. § 1316(b), to submit a State Plan Amendment concerning the expansion of eligibility provided for under the Affordable Care Act, and codified at 42 U.S.C. § 1396a(a)(10)(i)(VIII);

b. the proposed State Plan Amendment does not comply with Section 1902(a)(1) and (a)(2);

c. Federal Defendants lack statutory authority to approve the proposed State Plan Amendment and such approval would be contrary to law;

d. by approving the proposed State Plan Amendment, Federal Defendants would violate the Tenth Amendment by commandeering North Carolina to administer federal requirements without its consent;

e. by approving the proposed State Plan Amendment, Federal Defendants would violate the Guarantee Clause of the Constitution.

(ii) hold unlawful and set aside Federal Defendants' approval of the proposed State Plan Amendment;

(iii) compel Federal Defendants to disapprove the proposed State Plan Amendment;

(iv) preliminarily and permanently enjoin Federal Defendants from formally approving the proposed State Plan Amendment or any similar State Plan Amendment that does not comply with the requirements of Section 1902(a)(1) and (a)(2) of the Social Security Act and is not submitted pursuant to a valid authorization by the State;

(v) preliminarily and permanently enjoin State Defendants from submitting the proposed State Plan Amendment or any similar State plan amendment that does not

comply with the requirements of Section 1902(a)(1) and (a)(2) of the Social Security Act;

(vi) award Plaintiffs such other and further relief as this Court should find just and proper.

Dated: January 13, 2017  Respectfully submitted,

/s/ Nicole J. Moss
COOPER & KIRK, PLLC
Michael W. Kirk*
David H. Thompson*
Peter A. Patterson*
Nicole J. Moss* (State Bar No. 31958)
Haley N. Proctor*
William C. Marra*
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601
nmoss@cooperkirk.com
Counsel for Plaintiffs Phil Berger
and Tim Moore

/s/ Nathan A. Huff
PHELPS DUNBAR LLP
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 789-5300
Fax: (919) 789-5301
nathan.huff@phelps.com
State Bar No. 40626
Local Civil Rule 83.1 Counsel for
Plaintiffs Phil Berger and Tim Moore

*Notice of appearance forthcoming*