# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# CIVIL ACTION NO. 5:17-CV-25-FL

PHIL BERGER, et al.,

      Plaintiffs,

v.

THOMAS E. PRICE, M.D., et al.,

      Defendants.

**STATE DEFENDANTS' RESPONSE TO NOTICE REGARDING PLAINTIFFS' STANDING TO REPRESENT THE GENERAL ASSEMBLY**

**TABLE OF CONTENTS**

I. Plaintiffs' reliance on Session Law 2017-57 is futile because state law cannot retroactively grant Article III standing ................................................................................ 1

II. The decisions invoked by Plaintiffs do not support their effort to conjure up Article III standing after they filed suit................................................................................ 3

III. Session Law 2017-57 does not and cannot "confirm" that Plaintiffs had standing at the beginning of this case................................................................................ 4

IV. The Court should dismiss this state-law dispute................................................................ 7

## I. Plaintiffs' reliance on Session Law 2017-57 is futile because state law cannot retroactively grant Article III standing.

Defendants have argued from the beginning of this case that, among other problems, Plaintiffs lacked Article III standing because they had no authority under North Carolina law to bring suit on behalf of the General Assembly. Plaintiffs now effectively acknowledge that Defendants have been right all along. In a last-ditch effort to cure this fatal defect in their Complaint, Plaintiffs have secured the enactment of a new provision (Section 6.7(n) of Session Law 2017-57) stating that they "continue" to have authority to represent the General Assembly in this action. They argue that, in light of their new provision, they can proceed with the case. D.E. 54 at 2 ("Pl. Notice").

This salvage operation fails because it conflicts with a bedrock principle of standing law: A plaintiff must have "Article III standing at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In other words, for a case to be justiciable, "[t]he requisite personal interest . . . must exist at the commencement of the litigation." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). The consequence is that events that occur after suit is filed cannot supply that personal interest and create Article III standing after the fact. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569-70 n.4 (1992) (plurality op.) (because "jurisdiction is to be assessed under the facts existing when the complaint is filed," a party cannot "retroactively create[] a redressability (and hence a jurisdiction) that did not exist at the outset"); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) ("The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing."). As this Court has put it, a plaintiff cannot "retroactively cure defects" in her standing because "[t]he Court views questions

of standing at the time of filing of the complaint, and the doctrine admits of no exceptions." *Payne v. TR Assocs., LLC*, 880 F. Supp. 2d 702, 706 (E.D.N.C. 2012) (Boyle, J.).

It follows that a plaintiff who lacks the necessary authority to sue at the time it brings an action cannot later paper over that deficiency through a retrospective assignment of such authority. For example, in *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010), the court held that dismissal was required when patent rights were assigned to the plaintiff only after it filed suit because that belated assignment could not "cure the lack of standing existing when the complaint was filed." *Id.* at 1366-67; *see also, e.g.*, *iControl Networks, Inc. v. Alarm.com Inc.*, No. 1:13CV00834 LMB/IDD, 2013 WL 9838105, at *1-3 (E.D. Va. Dec. 11, 2013) (similar).

The result is no different when a state statute grants the plaintiff rights that purport to be retroactive under state law. For example, in *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003), the plaintiff was a corporation that had been dissolved when it filed suit. At that time, therefore, it had no enforceable rights with respect to the patents at issue in the case, and thus had no standing under Article III. *Id.* at 1308. The plaintiff's corporate existence was subsequently reinstated, however, and a Florida statute made that reinstatement retroactive. *Id.* at 1309. The plaintiff argued that, under the statute, it was deemed to have enforceable patent rights as of the date it filed suit, and it therefore had Article III standing. *Id.* The court of appeals rejected that argument. It held that the state statute could not override the Article III requirement that a plaintiff must have standing at the commencement of the action. *See id.* at 1309-10. "[W]hatever the effect of the corporate revival statute in Florida State courts," the court reasoned, "it cannot retroactively confer standing in federal court." *Id.* at 1309.

2

The principles in the above cases defeat Plaintiffs' reliance on Section 6.7(n) of Session Law 2017-57. They invoke a provision their colleagues enacted more than five months after Plaintiffs filed this case. Their provision purports to assign them the authority to bring suit on behalf of the General Assembly. It is thus a belated assignment of litigation authority that cannot satisfy Article III. As decisions such as *Paradise Creations* demonstrate, even a retroactive state law cannot override the federal constitutional requirement that a plaintiff must have standing at the time it initiates litigation.[1]

## II. The decisions invoked by Plaintiffs do not support their effort to conjure up Article III standing after they filed suit.

Plaintiffs are wrong in relying on *Arizona State Legislature v. Arizona Independent Redistricting Comm'n*, 135 S. Ct. 2652 (2015), and *Karcher v. May*, 484 U.S. 72 (1987). Pl. Notice at 2. Neither of those cases involved a retroactive attempt to create standing after litigation began. To the contrary, in *Arizona State Legislature*, the Supreme Court held that the legislature had state-law authority to bring suit—and thus had Article III standing—because it "commenced th[e] action *after* authorizing votes in both of its chambers." 135 S. Ct. at 2664 (emphasis added). *Arizona State Legislature* therefore confirms that, to satisfy Article III,

---

[1] Although Plaintiffs describe Section 6.7(n) of Session Law 2017-57 as a "statute" (Pl. Notice at 2), that description requires clarification. Session Law 2017-57 is, at its core, the state budget. To be sure, the General Assembly may enact or amend statutes as part of the budget, and Session Law 2017-57 provides that many of its sections are to be codified in the North Carolina General Statutes. It does not, however, provide for the codification of Section 6.7(n). Moreover, Section 6.7(n) was introduced late in the budget process, without a committee vote, bill sponsor, hearings, or any of the other deliberative procedures that typically accompany the enactment of a statute. Thus, to the extent that Plaintiffs' argument—the contours of which are difficult to discern from their brief "Notice"—rests on the characterization of Section 6.7(n) as a "statute," that argument fails for this reason alone. In any event, even assuming that Section 6.7(n) could be construed as a "statute," the outcome here would be the same because nothing in state law—statute or otherwise—can supersede Article III's mandate that standing must exist from the outset of the case.

3

Plaintiffs should have obtained authority from the General Assembly and then brought suit, not the other way around. That is, Plaintiffs needed to seek permission rather than forgiveness.

Plaintiffs' reliance on *Karcher* is equally misplaced. In that case, the Supreme Court concluded that the Speaker of the New Jersey General Assembly and the President of the New Jersey Senate had state-law authority to intervene on behalf of the New Jersey legislature based on a New Jersey Supreme Court decision, *In re Forsythe*, 91 N.J. 141, 450 A.2d 499 (1982). *See Karcher*, 484 U.S. at 82. *Forsythe* was handed down before the legislators intervened in *Karcher*, so the decision to allow intervention in *Forsythe* necessarily rested on state-law authority that already existed when the legislators subsequently intervened in *Karcher*. *See Forsythe*, 91 N.J. 141, 450 A.2d 499 (decided on May 21, 1982); *Karcher*, 484 U.S. at 75 (explaining that the legislators intervened sometime after the case was filed on December 17, 1982). Unlike this case, therefore, there was no question in *Karcher* that the legislators had the requisite state-law authority to represent the legislature *from the outset* of their involvement in the litigation.

**III.  Session Law 2017-57 does not and cannot "confirm" that Plaintiffs had standing at the beginning of this case.**

Although it controls the outcome of this case, Plaintiffs never even mention the rule that standing must exist at the outset of the litigation, much less explain how their reliance on Session Law 2017-57 can be reconciled with it. The closest that they come to addressing this problem is to assert that Section 6.7(n) of Session Law 2017-57 "expressly confirms [their] argument that, at all times during this litigation, they have had the authority to represent the institutional interests of the legislature." Pl. Notice at 2. But this provision does not "confirm" any such thing. It certainly does not do so expressly, as it states only that Plaintiffs "continue" to have authority to represent the General Assembly in this case, Session Law 2017-57, § 6.7(n)—not that they have

4

had such authority "at all times during this litigation" (Pl. Notice at 2).[2] In any event, as the State Defendants have explained, prior to the enactment of Session Law 2017-57, nothing in North Carolina law granted Plaintiffs the authority to bring suit on behalf of the General Assembly. D.E. 39 at 9-12; D.E. 42 at 2-4. Session Law 2017-57 cannot "confirm" (explicitly or otherwise) that Plaintiffs' authority to bring this case for the General Assembly "continues" to exist when that authority never previously existed.

To be sure, subsequent legislation can sometimes clarify the meaning of preexisting statutes. *See, e.g.*, *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 216-17, 388 S.E.2d 134, 141 (1990). Session Law 2017-57, however, does not even mention any preexisting statutes. It therefore does not evidence any intention or desire to clarify the meaning of such statutes. Indeed, likely for that reason, Plaintiffs do not invoke this interpretive principle in their Notice.

Regardless, Session Law 2017-57 could not legitimately "clarify" that any preexisting statutes granted Plaintiffs the authority to bring suit on behalf of the General Assembly because, by their plain terms, those statutes failed to grant Plaintiffs any such authority. "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess*, 326 N.C. at 209, 388 S.E.2d at 136; *see also, e.g.*, *United States v. Waste Indus., Inc.*, 734 F.2d 159, 166 (4th Cir. 1984) ("the views of subsequent Congresses cannot override the unmistakable intent of the enacting one"). When Plaintiffs brought this suit, the existing statutes concerning their authority to represent the General Assembly in litigation were clear and unambiguous: They allowed Plaintiffs only to

---

[2] Given that Plaintiffs undoubtedly drafted this provision, it is indicative of their chronic inattention to the requirements of Article III that they need to take liberties with their own language to argue that it supports their standing.

5

intervene in constitutional challenges to North Carolina law (N.C. Gen. Stat. § 1-72.2), and to designate whether outside counsel for the General Assembly would serve as its lead counsel in such litigation (*id.* § 120-32.6(c)). D.E. 42 at 3-4. Plaintiffs have conceded as much, admitting that these statutes did not grant them authority to sue, and insisting instead that an unwritten "background principle of North Carolina law" authorizes them to sue on the General Assembly's behalf whenever they please. D.E. 41 at 7. As the State Defendants have shown, however, no such "background principle" exists. D.E. 42 at 2-4. Indeed, if it did, there would have been no need for the General Assembly to enact Section 6.7(n) of Session Law 2017-57 in a fruitless attempt to confer on Plaintiffs the authority to maintain this action after the fact. Far from supporting Plaintiffs, therefore, this new enactment confirms that the State Defendants have been correct from the start: Plaintiffs lacked the necessary authority to bring this suit on behalf of the General Assembly at the time they filed it.

To be clear, Session Law 2017-57 also amended the statutes that were in place when Plaintiffs filed this suit—N.C. Gen. Stat. §§ 1-72.2 and 120-32.6. *See* Session Law 2017-57, §§ 6.7(i), (*l*). Nothing in those amendments, however, supports Plaintiffs' argument that they have standing in this case. In fact, they do the opposite. As amended, these statutes continue to authorize Plaintiffs to litigate on behalf of the General Assembly only in a *defensive* posture in cases in which state law is challenged on constitutional grounds. *See id.* Given the opportunity, therefore, the General Assembly did nothing to suggest that it agrees with Plaintiffs that they have the remarkable (and unconstitutional) authority that they have asserted in this litigation—namely, the authority to rove about as enforcers of state law and bring suit on behalf of the General Assembly, in either state or federal court, whenever they believe state law is being violated. *See* D.E. 39 at 10-11; D.E. 42 at 4. Like Section 6.7(n), therefore, these other sections

6

of Session Law 2017-57 confirm that Plaintiffs lacked the authority to file this action on behalf of the General Assembly at the commencement of the case.

Accordingly, to the extent that Section 6.7(n) is valid as a matter of North Carolina law and thus now grants Plaintiffs the state-law authority to represent the General Assembly in this action, it changed the law that existed at the time Plaintiffs filed suit. Even if one were to interpret the provision's use of the word "continue" as an implicit attempt to make this grant of authority retroactive, that would not help Plaintiffs because a state legislature's enactment cannot alter Article III's requirements, and thus cannot cure the absence of constitutional standing at the commencement of a case. *See supra* at 1-3. Session Law 2017-57 therefore does not remedy Plaintiffs' lack of Article III standing when they brought this action and cannot save this case from dismissal.

## IV. The Court should dismiss this state-law dispute.

In addition to failing to show that they had the authority to sue on behalf of the General Assembly when they brought this case, Session Law 2017-57 also fails to remedy the other problems with Plaintiffs' Article III standing that the State Defendants have identified, including that Plaintiffs' alleged injuries are neither concrete nor imminent, and instead are abstract and hypothetical. Moreover, Plaintiffs' invocation of Session Law 2017-57 confirms another point that the State Defendants have been making from the beginning of this litigation—namely, that this case is all about state law, and it therefore belongs in state court, not federal court.

The merits of each of Plaintiffs' claims turn on the state-law question of whether submitting the proposed SPA to the federal government would violate North Carolina law. And Plaintiffs' reliance on Session Law 2017-57 reinforces that Plaintiffs' case—including their futile effort to conjure up standing—rests entirely on state law. As the State Defendants have explained, therefore, Plaintiffs' lack of standing is not the only ground on which this Court

7

should dismiss. Rather, the state-law nature of this case also means that it conflicts with the Eleventh Amendment, that abstention is warranted, and that Plaintiffs fail to state a meritorious federal claim. For all of these additional reasons, the Court should dismiss.

[*Signatures on following page*]

This 14th day of July, 2017.

/s/ John R. Wester
John R. Wester
North Carolina Bar No. 4660
jwester@robinsonbradshaw.com
David C. Wright, III
North Carolina Bar No. 11161
dwright@robinsonbradshaw.com
J. Dickson Phillips, III
North Carolina Bar No. 8941
dphillips@robinsonbradshaw.com
Adam K. Doerr
North Carolina Bar No. 37807
adoerr@robinsonbradshaw.com
Erik R. Zimmerman
North Carolina Bar No. 50247
ezimmerman@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

Michael S. Kolber
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY 10036
Telephone: (212) 790-4500
mkolber@manatt.com

Benjamin G. Chew
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue NW, Suite 600
Washington, DC 20036
Telephone: (202) 585-6511
Facsimile: (202) 585-6600
bchew@manatt.com

*Attorneys for Defendants Mandy Cohen and The North Carolina Department of Health and Human Services*

9

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification to the following counsel of record:

| | |
|---|---|
| Nicole J. Moss<br>William C. Marra<br>Michael W. Kirk<br>Haley N. Proctor<br>David H. Thompson<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Avenue, N.W.<br>Washington, DC 20036<br>nmoss@cooperkirk.com<br>wmarra@cooperkirk.com<br>mkirk@cooperkirk.com<br>hproctor@cooperkirk.com<br>dthompson@cooperkirk.com<br><br>*Counsel for Plaintiffs Phil Berger and Tim Moore* | Nathan A. Huff<br>PHELPS DUNBAR LLP<br>4140 Park Lane Avenue, Suite 100<br>Raleigh, NC 27612<br>nathan.huff@phelps.com<br><br>*Local Civil Rule 83.1 Counsel for Plaintiffs Phil Berger and Tim Moore* |
| Joel L. McElvain<br>James Bickford<br>USDOJ, Civil Division<br>20 Massachusetts Avenue, NW, Room 7106<br>Washington, DC 20530<br>joel.mcelvain@usdoj.gov<br>james.bickford@usdoj.gov<br><br>*Counsel for Defendants United States Department of Health and Human Services, Andrew Slavitt, The Centers for Medicare and Medicaid Services, and Sylvia Burwell* | |

This 14th day of July, 2017.

/s/ John R. Wester
John R. Wester
North Carolina Bar No. 4660
jwester@robinsonbradshaw.com

Robinson, Bradshaw & Hinson, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

*Attorneys for Defendants Mandy Cohen and The North Carolina Department of Health and Human Services*